70 N.J. 213 (1976)
358 A.2d 782
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH SMITH, MICHAEL RYTELEWSKI, HERBERT DOLAN AND JAMES W. HYRES, DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued December 1, 1975.
Decided May 17, 1976.
Mr. Robert E. Levy argued the cause for appellant Smith.
Mr. Paul J. Feldman argued the cause for appellant Rytelewski (Mr. Charles Frankel, attorney).
*214 Mr. Theodore J. Labrecque, Jr., argued the cause for appellant Dolan (Messrs. Labrecque, Parsons and Bassler, attorneys).
Mr. Roland R. Formidoni argued the cause for appellant Hyres (Messrs. McLaughlin, Abbotts and Cooper, attorneys; Mr. James J. McLaughlin on the brief).
Mr. Daniel L. Grossman, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
The judgment is affirmed substantially for the reasons expressed by the Appellate Division.
PASHMAN, J. (dissenting).
This case poses the question whether defendants' fundamental right to a speedy trial which is protected by the sixth and fourteenth amendments of the United States Constitution and article I, paragraph 10 of the New Jersey Constitution of 1947, has been denied by lengthy delays in their prosecution. The majority today determines that these delays, which extended for a three year period, did not contravene defendants' constitutional rights for the reasons enunciated by the Appellate Division, State v. Smith, 131 N.J. Super. 354 (App. Div. 1974). From this disposition, I must dissent.
This case involves two separate appeals which arise from different though related indictments. The first appeal contests an order entered on October 26, 1973 which dismissed defendants' indictment without prejudice (hereinafter the "first appeal"). The second appeal relates to an adverse decision (rendered on April 19, 1974) to defendants' motion for a judgment of acquittal from a subsequent indictment (hereinafter the "second appeal").[1] On both occasions, defendants *215 argued for acquittal on the ground that their right to a speedy trial had been denied. While the discussion of these appeals in the Appellate Division opinion makes a full restatement of the facts unnecessary, a brief outline of the procedural history is instructive.
The first appeal concerns the indictment of appellants, who are public officials of Jackson Township, on various counts of conspiracy, bribery, extortion and misconduct in office. They were indicted with one James Callahan, by an Ocean County Grand Jury on March 3, 1971. A trial was initially scheduled for October 18, 1971 but was postponed until October 26, 1971, at which time another adjournment was granted on motion by the State. On January 14, 1972, the Ocean County Grand Jury returned a superseding indictment which was virtually identical to the earlier indictment.[2] Trial was scheduled for February 14, 1972 and again for March 27, 1972. Nonetheless, as with the first indictment, these hearings were postponed upon request by the State. On April 10, 1972, all parties again appeared in court for trial, but again the State requested an adjournment  this time because the Attorney General's office had just entered the case and was not prepared to proceed.[3] Over the objections of defendants, the matter was rescheduled for April 17, 1972 with the explicit understanding that no additional continuances would be granted. However, on April 14, 1972, the State moved to dismiss the superseding indictment without prejudice because of new developments in its investigations. These developments primarily concerned negotiations which the State was conducting with Callahan in hopes that he would appear as a witness for the State. Counsel for Hyres, Dolan and Rytelewski objected to this *216 delay and suggested that the dismissal should be granted with prejudice. After hearing arguments, the court granted the State's motion although an order to this effect was not formally entered until October 26, 1973. These facts form the basis for appellants' claim with respect to their first appeal. In essence, they contend that the State's failure to bring this matter to trial between March 3, 1971 (the day they were indicted) and April 14, 1972 (the day the superseding indictment was dismissed)  an interval of 13 months  constituted a denial of their right to a speedy trial.
The second appeal arises from appellants' reindictment on May 16, 1973, 13 months after the second and superseding indictment was dismissed. No trial date was set for this new indictment and defendants did not move for a date certain under R. 3:25-2. On April 19, 1974, more than 11 months after their reindictment, defendants moved for a judgment of acquittal. The failure of the State to bring this case to trial before that date (April 19, 1974) forms the basis for defendants' second appeal.
Although the right to a speedy trial asserted by defendants is basic to the provision of a fair trial, it should be noted that under existing law, different significance is accorded the right by courts on the state and federal levels. While the right to a speedy trial under our State Constitution has been construed only as a right to request a date certain for trial, State v. Masselli, 43 N.J. 1, 12 (1964); State v. Coolack, 43 N.J. 14, 16 (1964); State v. O'Leary, 25 N.J. 104 (1957); State v. Smith, 10 N.J. 84, 93 (1952); R. 3:25-2, the United States Supreme Court has recognized its importance in safeguarding the constitutional protection afforded individual defendants and thus has provided this fundamental right with greater force and vitality.[4] In addition, the United States Supreme Court has held that the *217 constitutional guarantee of a speedy trial is applicable to the states under the fourteenth amendment. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); see also Dickey v. Florida, 398 U.S. 30, 37-38, 90 S.Ct. 1564, 26 L.Ed.2d 26, 31-32 (1970); Smith v. Hooey, 393 U.S. 374, 375, 383, 89 S.Ct. 575, 21 L.Ed.2d 607, 609, 614 (1969).
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court established guidelines for determining whether there has been an infringement of this right. Pursuant to these guidelines, the Supreme Court adopted a "balancing test" which identified four factors the Court considered relevant to an assessment of the competing interests: the length of the delay, the reasons for the delay, defendant's assertion of his right and the prejudice suffered by the defendant. Id. 407 U.S. at 530, 92 S.Ct. at 2191, 33 L.Ed.2d at 117. See generally, Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); Note, "The Constitutional Guarantee of a Speedy Trial," 8 Ind. L. Rev. 414 (1974); Uviller, "Barker v. Wingo: Speedy Trial Gets a Fast Shuffle," 72 Colum. L. Rev. 1376 (1972). Admittedly, it was this test which the Appellate Division sought to apply in the instant case. 131 N.J. Super. at 361.
In reviewing its application of the Barker v. Wingo test to defendants' first appeal, I agree with the well-reasoned opinion of the Appellate Division. Speaking for that court, Judge Morgan observed that defendants' vigorous objections to the adjournment on April 10, 1972 and to the dismissal four days later represented a sufficient assertion of their speedy trial right (131 N.J. Super. at 367); and further, that the justifications of the State for the continuous postponement of the trial were "less than wholly satisfactory." 131 N.J. Super. at 363. Nevertheless, she concluded that these factors were outweighed by countervailing considerations such as the absence of prejudice, the justification for the 13-month delay *218 arising from the necessity to replace the county prosecutor (see note 3 supra), and the legal complexities which are inherent in cases involving multiple defendants and multiple criminal charges and which require extensive preparation. 131 N.J. Super. at 362-64, 367-68. It is primarily these last two factors which differentiate the case at bar from State v. Szima, 70 N.J. 196 (1976), also decided today. While I consider this to be a close case, I find the Appellate Division's disposition of the first appeal to be supported by the evidence.
I disagree, however, with the resolution of the Appellate Division concerning defendants' second appeal. In applying the balancing test to that appeal, the Appellate Division completely underestimated the importance of the 13-month interval between the dismissal of the prior indictment and the reinstitution of proceedings on May 16, 1973, by concluding that "[d]uring that hiatus defendants were free of all charges relating to this matter ..." 131 N.J. Super. at 369. I submit that the Appellate Division erred in the weight which it accorded this 13-month period. In Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975), decided after the Appellate Division had rendered its decision in this case, the United States Supreme Court clearly held that preindictment delays, as well as delays between indictment and trial, are equally subject to limitations imposed under the sixth amendment. See also United States v. Marion, 404 U.S. 307, 321, 92 S.Ct. 455, 30 L.Ed.2d 468, 479 (1971); Barker v. Wingo, supra, 407 U.S. at 519-20, 92 S.Ct. at 2186, 33 L.Ed.2d at 110-111; Note, "The Right to a Speedy Trial," 20 Stan. L. Rev. 476 (1968). As the Appellate Division itself conceded, appellants were aware of the persistent and almost certain threat that the criminal charges would be revived. As to the inherently prejudicial nature of preindictment delays, see generally Dillingham v. United States, supra, 423 U.S. at 64, 96 S.Ct. at 303, 46 L.Ed.2d at 207; Barker v. Wingo, supra, 407 U.S. at 533, *219 92 S.Ct. at 2193, 33 L.Ed.2d at 118; United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627, 630 (1966); Smith v. Hooey, supra, 393 U.S. at 377-380; 89 S.Ct. at 576, 21 L.Ed.2d at 611-612; Klopfer v. North Carolina, supra, 386 U.S. at 221-22, 87 S.Ct. at 992, 18 L.Ed.2d at 6-7; Hanrahan v. United States, 121 U.S. App. D.C. 134, 348 F.2d 363, 366-67 (1965); Frankel v. Woodrough, 7 F.2d 796, 798-99 (8 Cir.1925). If both the pre-indictment period and the interval prior to defendants' motion for judgment of acquittal are considered, the delay becomes 24 months and not, as the Appellate Division would have it, "less than a year." 131 N.J. Super. at 369.
More importantly, however, the Appellate Division erred in its disposition of defendants' second appeal by its failure to consider the subsequent delay of 24 months in conjunction with the earlier delays encountered in this case. While the dismissal without prejudice on April 14, 1972 may have been technically proper with respect to defendants' sixth amendment rights, such propriety should not restrict our further consideration of this matter. It was incumbent upon the prosecution, which had already obtained numerous delays, to file new charges (if any) and to schedule a trial in an expeditious fashion. Where defendants have once asserted their rights, they should not bear the onus of instigating new proceedings. Had there not been two dismissals of a previous indictment and the subsequent postponement of at least five interim trial dates, the ensuing delay of 24 months might very well have been justifiable and nonprejudicial. However, once delays of nearly three years had accumulated, the State bore a very heavy responsibility to bring this matter to an expeditious conclusion. United States v. Mann, 291 F. Supp. 268 (S.D.N.Y. 1968).[5]
*220 As I more fully discuss in my dissenting opinion in State v. Szima, supra, 70 N.J. at 196, also decided today, this responsibility is intended to protect the interests of both society and the individual criminal defendant. The State has failed to meet its responsibility.[6] Defendants have clearly been denied their right to a speedy trial.
I would reverse the Appellate Division and dismiss the indictment. Only through such judicial sanctions can the rights of criminal defendants be vindicated. See State v. Alston, 70 N.J. 95, 98 (1976) (Pashman, J., dissenting).
CONFORD, P.J.A.D., Temporarily Assigned (dissenting).
I am of the view that the totality of circumstances attending these prosecutions impellingly conduces to the conclusion that they should be dismissed for failure to accord the defendants a speedy trial. Despite the fact that all defendants (except Smith, for a limited period, because of illness) have persistently indicated their readiness and desire to be tried, the State for a number of more or less insubstantial reasons has delayed a trial, obtained a dismissal without prejudice, reinstated the charges in a new indictment and continued to procrastinate without bringing defendants to trial. This tactical inaction by the State consumed a period from March 3, 1971, when the first indictment was returned, *221 to April 19, 1974, when defendants' motion for acquittal for failure of diligent prosecution was denied.
I disagree with the intimation in the Appellate Division opinion that the 13 month period between dismissal of Indictment 289-71 and the return of Indictment SGJ 14-73-2 does not weigh in the overall equation because "defendants were free of all charges relating to this matter." As everyone in the case well knows, this was a maneuver on the part of the State to permit reinstitution of the charges at a later time, and all defendants knew that the Sword of Damocles still hung over them. See Barker v. Wingo, 407 U.S. 514, 532, 533, 534, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
Unfortunately, the analysis by the Appellate Division treats the correctness of the dismissal without prejudice of Indictment 289-71 as entirely disparate from that of the correctness of the denial of the motion for acquittal of April 19, 1974, subjecting each, separately analyzed, to the balancing criteria of Barker v. Wingo, supra. So regarded, it is relatively easy to render a discretionary finding in each sub-transaction favoring the State. But when the whole series of events constituting this single, integral prosecution is considered as a unit, as it clearly should be, within the philosophy of Barker and the spirit of the important constitutional and public policy interests involved, the balance of the four Barker factors clearly predominates toward dismissal on speedy trial grounds. See my dissent in State v. Szima, decided this day. Absence of "actual prejudice" is of course not an absolute bar to relief if otherwise warranted. See Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205, 207 (1975).
I would reverse the judgment of the Appellate Division.
For affirmance  Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER and Judge KOLOVSKY  5.
For reversal  Justice PASHMAN and Judge CONFORD  2.
NOTES
[1] Although appellant Smith did not appeal from the April 19, 1974 order, his rights are coterminous with those of the other defendants and hence should be vindicated by this Court sua sponte.
[2] Although the first indictment was not dismissed until April 19, 1972, this delay was probably due to inadvertence.
[3] Apparently, the Division of Criminal Justice had replaced the Ocean County Prosecutor sometime in March or April 1972 when a conflict of interest involving the prosecutor's office was discovered.
[4] See State v. Szima, 70 N.J. 196, 203 (1976) (Pashman, J., dissenting).
[5] In United States v. Mann, supra, 291 F. Supp. at 271, the court described the prejudice which accrues to defendants under these circumstances as follows:

Where delay is as long and as groundless as that revealed here, prejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years.
[6] Note that the newly enacted Speedy Trial Act of 1974, Pub. L. 93-619, 18 U.S.C.A. § 3161 et seq. provides that by July 1, 1978, all criminal cases in the federal courts shall be brought to trial within 60 days after arraignment or shall be dismissed. 18 U.S.C.A. §§ 3161(c), 3162(a)(2). It also provides for implementation of this provision over a period of three years, gradually reducing the time limit from 180 days to 60 days. 18 U.S.C.A. § 3161(g). Compare this requirement with the 37 month delay involved in this case.